**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
GLENCORE LTD., *et al.*,

                          Plaintiffs,                        **ORDER**

         -against-                        **23-CV-11125 (ALC) (JW)**

LOUIS DREYFUS COMPANY B.V., *et al.*,

                          Defendants.
-----------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

On October 28, 2024, the Court ordered the Parties to attempt to resolve and file a letter on the multiple outstanding discovery issues in this matter. Dkt. No. 68. On November 8, 2024, the Parties filed a joint letter informing the Court that six discovery issues remained unresolved. Dkt. No. 69. The Court then ordered the Parties to appear for oral argument. Dkt. No. 73. On November 20, 2024, the Court held oral argument on the six discovery disputes and issues a ruling on each of the issues in turn. Dkt. No. 82. The Court assumes familiarity with the background of this case. For a detailed description of the relevant facts see Dkt. No. 82 at 10–16.

    A. **Plaintiffs' Motion to Compel Documents**

On August 8, 2024, Plaintiffs moved to compel the production of documents regarding the Defendants' "sales commitments, buybacks, and cancellations; their daily global position reports; and their documents relating to Value at Risk ("VaR") and working capital allocation." Dkt. Nos. 69, 42.

### i. Daily global position reports

The Parties acknowledge that both Judge Fox and Judge Carter, in the parallel proceeding, denied those plaintiffs' (the "Parallel Plaintiffs") request for the daily global position reports finding that the reports were "tangential" to the case. Dkt. No. 45-8 at 8.

Plaintiffs assert that the daily global position reports are relevant to this case as they are of importance to Plaintiffs' theory of the case. Dkt. No. 82 at 34–36. Plaintiffs' theory being that Defendants "slow played" transactions with their customers "so that they could overrepresent their unfilled sales to I[C]E and obtain [] hedge exemptions." Id. at 36. More specifically, Plaintiffs argue that this case is different from the parallel matter because Plaintiffs "attempted to, and in much smaller numbers did, directly transact with defendants in the cash market." Id. Plaintiffs also assert that the daily global position reports "have greater relevance" in this action because Plaintiff Glencore's offers were "a major focus of deposition testimony and will feature prominently at trial." Dkt. No. 69.

Defendants counter that the daily global position reports remain tangential because Glencore's offer to sell Defendants cotton was included in the parallel case and "is something that's actually at the centerpiece of the [parallel] complaint." Dkt. No. 82 at 39. Thus, Defendant asserts that Plaintiffs' contention that the daily global position reports are of more significance to this case because of that offer is "simply not correct." Id. at 40.

The 2013 complaint in the parallel case and the Complaint in this case bear almost identical allegations regarding Defendants' failure to accept Plaintiff Glencore's offers of cotton. One slight difference is that the Complaint in this case alters the allegations to read "Glencore offered," or similar wording, compared to phrases such as "[a]n offer" found in the 2013 complaint. Compare Dkt. No. 1 at ¶¶ 83, 92, 95–96, 98 with In re Term Commodities Cotton Futures Litigation, Case No. 12-cv-5126, Dkt. No. 1 at ¶¶ 57, 59, 60–61. Both complaints allege that Defendants' refusal or inaction was a deliberate manipulation of the market to earn profit. Dkt. No. 1 at ¶ 97; In re Term Commodities Cotton Futures Litigation, Case No. 12-cv-5126, Dkt. No. 1 at ¶ 63. The Court is not convinced by Plaintiffs' submissions or statements at oral argument that the daily global position reports are any more relevant here than they were at the time of Judge Fox and Judge Carter's decisions.[1] Therefore, Plaintiffs motion to compel those reports is **DENIED**.

---

[1] To the extent Plaintiffs argue that Judge Fox's decision was made only after the issues were "narrowed," that argument is also unavailing. See Dkt. No. 82 at 35. First, while guided by Judge Fox and Carter's decisions this Court makes an independent determination of relevance based on the Parties arguments. Second, the December 20, 2013, order from Judge Carter that would have "narrowed" the issues ruled that the claims for CEA Manipulation, CEA Aiding and Abetting, and Section 2 of the Sherman Act all survived. In re Term Commodities Cotton Futures Litigation, Case No. 12-cv-5126, Dkt. No. 80. (S.D.N.Y.). The Present case only alleges those three causes of action. Dkt. No. 1. Thus, the parallel case was not narrowed in a way that affects the relevance of the issues present in this case's causes of action.

### ii.  Sales Commitments

Plaintiffs also seek additional communications regarding Defendants' sales commitments with their customers. Dkt. No. 42. Plaintiffs theorize that "[t]he apparent, striking success of Defendants' position reduction efforts over such a short period raises the specter of a deliberate plan by Defendants to delay cancellations, buybacks, and rollovers until after ICE had issued its exemption." Id. Plaintiffs suggested at oral arguments that they "think" traders Tim Bourgois, Spencer Kimble, Jamie O'Donohue should possess the relevant information. Dkt. No. 82 at 25.

Defendants counter that they "have already produced the relevant emails from the key executives and thousands of contract documents showing the disposition of these contracts." Dkt. No. 46. Defendants rebut Plaintiffs' theory that Bourgois, Kimble, O'Donohue possess relevant information by asserting "it would sort of be inconceivable" that those three "would be involved in such a plan, but the top [executives] would not have had any involvement." Dkt. No. 82 at 32.

A plaintiff may obtain discovery on any nonprivileged communications relevant to their claim and proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). However, such inquiries should be accompanied by objective support rather than mere speculation. See In re Bernard L. Madoff Inv. Sec. LLC, No. 13 CIV. 4332 (ALC), 2014 WL 1302660, at *7 (S.D.N.Y. Mar. 31, 2014) (finding discovery "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").

While Plaintiffs represent to this Court that this is not a "fishing expedition," their theory suggests otherwise. See Dkt. No. 82 at 25. Defendants have produced emails and documents from those represented to the Court to be in charge of their business. See Dkt. Nos. 46, 69. It would indeed be a "fishing expedition" to allow Plaintiffs to seek documents from lower-level employees until they find something incriminating solely on the theory that Defendants' success was so striking it must have been fraudulent. Plaintiffs' support that their inquiry will lead to relevant evidence is so speculative that any proportionality analysis would result in an unduly burdensome obligation placed on Defendants. Thus, Plaintiffs motion to compel production of documents regarding sales commitments is **DENIED**.

### iii. Buybacks, cancellations, and rollovers.

Plaintiffs moved to compel additional production of documents surrounding the negotiation strategies of the relevant buybacks, cancellations, and rollovers. Dkt. No. 42. Plaintiffs argue that "Defendants' negotiation strategies must have resulted from internal analyses and communications which have not been, but should be, produced." Id. More specifically, Plaintiffs seek communications from overseas traders who effectuated the sales and cancellations of "at least 500,000 and perhaps many more bales of sales commitments." Dkt. No. 69. Plaintiffs argue that had "[Defendant] LDC cancelled these sales just a few days earlier, it could not have even purported to justify its application to ICE for a hedge exemption equivalent to 1.4 million bales." Id. Plaintiffs suggest that the documents surrounding these

5

successful and "almost miraculous[]" cancelations would shed light on one of Defendant "LDC's most significant acts evidencing its manipulative intent." Id.

Defendants again argue that they have produced the "relevant communications of their top cotton executives responsible for Defendants' strategies." Dkt. No. 46. And that "[i]t is entirely implausible that any negotiation strategies were memorialized *exclusively* in the communications of lower-level custodians whose emails were not produced." Id.

Plaintiffs provide slightly more support for these categories, including that Defendants have not produced any documents from the overseas traders "that gave rise to both the original sales and the cancellations accomplished between June 21-24, 2011." Dkt. No. 69. However, their justification remains speculative and based on a theory that would ask this Court to permit a fishing expedition. Moreover, Plaintiffs cite no caselaw that the favorable timing of the sales and cancellations alone is enough to warrant additional discovery. For similar reasons stated above, Plaintiffs' motion to compel documents from lower-level employees is **DENIED**. See supra Section (A)(ii) at 4–5.

### iv. VaR and working capital allocation guidelines

Plaintiff argues that Defendants should be compelled to produce documents regarding "V[a]R and working capital allocation." Dkt. No. 82 at 41. Plaintiffs posit that "this ***could*** be a very important issue in the case because ***if*** defendants were taking on what they themselves judged as undue or irresponsible levels of risk in order to take these huge futures positions against economic reasons, that's highly

6

indicative of manipulative behavior. " Id. at 42 (emphasis added).  Plaintiffs also state that these topics "should have been a topic of serious discussion at the highest levels, but Defendants have produced virtually no such communications and refuse to produce more." Dkt. No. 42.

Defendants state that the executives "in Memphis who are running the business [] are the only folks who have the ability to say change the position or they can explain to the risk folks who are not people in cotton…." Dkt. No. 82 at 45. Defendants state that if the communications Plaintiffs seek existed, they would have been included in the previously produced communications of the executives. Dkt. No. 46.

Here, Plaintiffs provide no support for the argument that these communications should be compelled, or even exist, outside of the hunch that they should have been in the production and were not there.  Thus, Plaintiffs motion to compel the alleged communications is **DENIED**.

### B. Plaintiffs Motion to Compel Hamy and Mamalis

Plaintiffs informed the Court that their August 28, 2024 letter is moot except to the extent it relates to the depositions of Swiss citizens Olivier Hamy and Nigel Mamalis. Dkt. No. 69; see also Dkt. No. 51.  Thus, Plaintiffs now ask that the Court compel Defendants to make Hamy and Mamalis available for Rule 30(b)(6) depositions. Dkt. No. 69. Plaintiffs reason that because Defendants "agreed to make Mamalis available and then waited until four weeks before the close of fact discovery to reverse course," it was no longer feasible to go through Swiss authorities and the

7

Court should compel Defendants to produce him.  Id.  Plaintiffs also argue that because Hamy is still under Defendants' control, the Court should compel Defendants to produce him as well.  Id.

Defendants argue they are under no obligation to facilitate the depositions of Hamy and Mamalis as they are not subject to deposition by notice.  Dkt. No. 54 (citing United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 413 (S.D.N.Y. 1994).  Defendants assert that Mamalis is a former employee no longer under their control and Hamy is employed by a foreign affiliate and "not a managing agent of Defendants."  Id.  Defendants also state that "Swiss law does not permit Plaintiffs or Defendants to take or defend a deposition of a witness sitting in Switzerland without permission from Swiss authorities—even where the witness consents."  Dkt. No. 69.

Separately, Defendants assert that Plaintiffs have already conducted 10 depositions and are not permitted to more without leave of the Court.  Dkt. No. 69 (citing Fed. R. Civ. P. 30(a)(2)(A)(i)).

The Court agrees with Defendants that leave to exceed the deposition limit should have been sought.  Assuming *arguendo* that Plaintiffs' motion is seeking such leave, Plaintiffs must still provide a legal basis for their motion to compel.  Under Afram, when attempting to depose a 30(b)(6) witness, "the party seeking the deposition may identify a specific officer, director, or managing agent to be deposed and notice that person under Rule 30(b)(1)." Afram Lines (USA), Ltd., 159 F.R.D. at 413.  The burden of establishing a witness is indeed a specific officer, director, or managing agent rest with the Plaintiffs.  See In re Terrorist Attacks on Sept. 11,

8

2001, No. 03-MDL-01570 (SN), 2020 WL 8611024, at *3 (S.D.N.Y. Aug. 27, 2020), objections overruled, No. 03-MDL-1570 (GBD), 2021 WL 2227204 (S.D.N.Y. June 2, 2021). Plaintiffs do not allege nor establish that either of these witnesses are in one of those categories. Therefore, the motion to compel their production for a deposition is **DENIED**.

At the November 20th oral argument, Defendants represented to this Court that they did not act in bad faith when offering to facilitate the deposition of Mamalis before later finding out it was not possible under Swiss law. Dkt. No. 82 at 52–54. Rather Defendants "were telling and updating [P]laintiffs in real time as [Defendants] were learning what happened." Id.

Also during oral argument, the Parties mentioned a second method of completing the deposition of Mamalis where they could "request approvals from Swiss authorities, but [] do not have to go through the whole Hague Convention process." Dkt. No. 82 at 54–55. Plaintiffs served Defendants with a 30(b)(6) deposition notice for Mamalis on July 26, 2024. Dkt. No. 51. Plaintiffs then moved to compel the deposition of Mamalis on August 28, 2024, and the Court did not rule on the motion before the close of fact discovery on October 28, 2024. See id. Because neither Party acted in bad faith with regard to the discovery of Swiss law practices, Plaintiffs are afforded back the 94 days between their notice and the close of discovery to depose the witness. The Parties have until 94 days from the date of this Order to attempt to facilitate the deposition of Mamalis via the second method involving the approval of Swiss authorities.

9

Given Plaintiffs' representation that their motion to compel the depositions of witnesses other than Hamy and Mamalis is moot, Defendants' motion for a protective order limiting the length of the depositions of Messrs. Nicosia, Malone, Brown, Dyer, and Tancredi, is **DENIED** as moot.  See Dkt. Nos. 54, 69.

### C. Defendants' Motion for Issuance of an International Letter of Request and the Parallel Plaintiffs' Motion for Leave to File an Amicus Curiae Brief

On September 19, 2024, Defendants filled a motion petitioning this Court for the issuance of an international letter of request to the Supreme Court of New South Wales.  Dkt. Nos. 57–58.  "The person from whom evidence is sought by the Letter of Request is Mark Allen" based on his "knowledge of facts bearing on the central issues of this case, and the documents and testimony sought are material to Defendants' defenses."  Dkt. No. 58 at 6.

Plaintiffs do not oppose the motion except that Plaintiffs do not consent to any deposition being held after the end of the fact discovery period.  Dkt. No 59.

On September 26, 2024, Parallel Plaintiffs filed a letter motion requesting leave to file an amicus brief in opposition of Defendants' letter request.  Dkt. No. 62. Parallel Plaintiffs' letter asks that the Court deny Defendants' request and, if inclined to grant it, the Court should substantially limit the questioning.  Parallel Plaintiffs' proposed limitations include: (1) "any deposition should be limited to relevant topics not already covered in the [parallel] action;" (2) "any deposition should be limited to two hours for all questioning;" (3) "the Court should strike Defendants' requests for additional document discovery from Mr. Allen;" and (4) "any testimony, documents,

or other discovery arising from the Letter Request be limited for use in the [this] action only." Id. Counsel for Parallel Plaintiffs also attended the November 20th oral argument and was heard on these issues. Dkt. No. 82 at 71–75.

In their reply letter, Defendants argue that they "will not be re-deposing Allen about the same issues he was questioned about 9 years ago," but will instead focus any questioning on his role "as Plaintiffs' former head cotton trader in their losses." Dkt. No. 65. Similarly, Defendants then argue that previous document production by Mr. Allen did not include "any internal Glencore documents," making his deposition more necessary. Id. Defendants agree that a deposition of Mr. Allen should be limited in duration but suggests five hours instead of two. Id. Lastly, Defendants argue that the scope of the use of any testimony from Mr. Allen is not yet ripe for the Court to decide, and the Court should wait until it is to rule on any issues regarding it. Id.

The Court takes note that both Plaintiffs and Defendants waited longer than they should have to timely depose, or start the process to depose, witnesses in this case. Given the Court's allowance for Mamalis to potentially be deposed, Defendants motion for an issuance of an international letter of request is **GRANTED** and Parallel Plaintiffs' request to file an amicus brief is **DENIED.** To be clear, this order does not permit Defendants to extend discovery to depose Mr. Allen. However, because Defendants filed their motion petitioning this Court for an issuance of an international letter of request on September 19, 2024, and the Court did not rule on the motion before the close of fact discovery on October 28, 2024, Defendants are

afforded back those 39 days. Defendants have until 39 days from the date of this Order to issue their international letter of request and depose Mr. Allen.[2]

The Court agrees with Parallel Plaintiffs that any potential deposition of Mr. Allen should be limited both in timing and scope. Should a deposition take place, Defendants questioning is limited to four hours. While the Court is aware that there will be overlap, Defendants should not question Mr. Allen on any topics that solely relate to the parallel case. The Court reserves its decision on the potential use of any discovery obtained from Mr. Allen's deposition testimony until after the conclusion of such deposition.

Plaintiffs, Parallel Plaintiffs, and Defendants are ordered to meet and confer and discuss the proposed solution "that documents produced by Allen in the Class Case may be deemed produced in this Action." See Dkt. No. 65 n.3. The Parties are to update the Court on any decision **by April 2, 2025.**

### D. Defendants' Motion for a Protective Order

On October 18, 2024, Defendants filed a letter motion for a protective order to strike Topics 17 and 22 from Plaintiffs' Amended Rule 30(b)(6) Notices dated September 13, 2024.[3] Dkt. No. 66. The Court is not in possession of the Amended

---

[2] This Court will sign, and file Defendants' Proposed Order Granting Unopposed Motion for Issuance of International Letter of Request the shortly after this Order is filed.

[3] The Court did not hear oral arguments on this issue. At the November 20th oral argument, the Parties agreed to rest on the papers concerning this issue. Dkt. No. 82 at 81.

Rule 30(b)(6) Notices, but Defendants' letter informs the Court that the topics read as follows:

> **Topic 17:** "Between January 1, 2000 and the present, any ICE or CFTC investigations, fines, penalties, sanctions, charges, disciplinary action, or settlements relating to (i) Your or (ii) any Louis Dreyfus entity's, or (iii) any Louis Dreyfus officer's, director's, agent's, and/or employee's, Cotton Contracts and/or employee's, Cotton Contracts and/or cotton trading activities or transactions."[4]
>
> **Topic 22:** "Your preservation, if any, of communications involving cotton traders other than Thomas Malone, Joseph Nicosia, and Anthony Tancredi, and the location of these documents."

Dkt. No. 66.

    *i.*    *Topic 17*

Defendants also argue that the relevant "ICE and [] CFTC's investigations into the conduct at issue in this case" have already been produced. Dkt. No. 66. Thus, any discovery seeking information about investigations "entirely unrelated to this case" is irrelevant and a fishing expedition. Id.

Plaintiffs counter, in sum, that the sought discovery is relevant as it could show "Defendants had prior experiences which informed their awareness as to the types of conduct that can create disorderly trading" or "could violate the letter and/or spirit of the applicable rules."

"Under Federal Rule of Civil Procedure 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

---

[4] The Parties later agreed to limit the time frame to between January 1, 2000 and December 1, 2011. Dkt. No 66.

U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc., 593 F. App'x 32, 36 (2d Cir. 2014) (summary order) (citing Fed.R.Civ.P. 26(b)(1)) (internal quotation marks omitted). "Relevance to the subject matter under Rule 26 is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Id. (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Given the broad allowance for discovery, this Court concludes that topic 17 is relevant to Plaintiffs' claims.

Defendants also argue that Topic 17 should be stricken because its directed at inadmissible evidence and any possible use of it would be to show propensity. Dkt. No. 66. Defendants argue that such use would be impermissible. Id. (citing United States v. Schampers, No. 22-CR-31, 2023 WL 1098445, at *3 (E.D. Wis. Jan. 30, 2023); United States v. Johnson, 262 F.R.D. 410, 419 (D. Del. 2009); United States v. Lattanzio, No. CR 15-446 (KM), 2018 WL 1837856, at *16 (D.N.J. Apr. 16, 2018)).

Plaintiffs argue that Topic 17 "is plainly not directed at inadmissible propensity evidence" but rather "directed at admissible evidence of Defendants' intent, knowledge, absence of mistake, or lack of accident." Dkt. No. 67. Plaintiffs take the position that the Second Circuit has affirmed the admissibility of such evidence where a defendant's intent and/or knowledge is relevant. Id. (citing United States v. Vaccarelli, No. 20-3768-cr, 2021 WL 4805218, at *2 (2d Cir. Oct. 15, 2021); Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 136 (2d Cir. 2008); United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981)).

14

The Parties arguments concerning admissibility are, at this time, immaterial. "It is not the function of this Court, in assessing relevance for purposes of discovery, to decide issues of admissibility or resolve potentially dispositive disputes, because [r]elevant information need not be admissible." DoorDash, Inc. v. City of New York, No. 21-CV-7564 (GHW) (GS), 2024 WL 4589891, at *11 (S.D.N.Y. Oct. 25, 2024) (citing Favors v. Cuomo, 285 F.R.D. 187, 218 (E.D.N.Y. 2012) (internal quotation marks omitted)); see also Fed.R.Civ.P. 26(b)(1).

For the reasons discussed above, Defendants' motion to strike topic 17 is **DENIED.** The Parties have until **April 2, 2025** to conduct a limited deposition addressing topic 17. The Parties may also discuss whether production of documents is more efficient. Should the parties choose document production, topic 17 is limited to documents within Defendants' control.

## ii. Topic 22

Defendants argue that "discovery on discovery" is not warranted unless Plaintiffs can provide an adequate factual basis to justify it and that it is a "disfavored" request. Dkt. No. 66 (citing Haroun v. ThoughtWorks, Inc., No. 20-CV-0100 (LJL), 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020); Roche Freedman LLP v. Cyrulnik, No. 21-CV-01746 (JGK) (SN), 2023 WL 3867238, at *1 (S.D.N.Y. Jan. 3, 2023)). Defendants then argue that they "have been litigating the parallel class action for more than 12 years" and there is no indication in that case or this one that documents were not preserved. Id.

Plaintiffs argue that they have indeed provided a factual basis for discovery on discovery as they have identified "gaps in the production of ESI." Dkt. No. 67 (citing Haroun v. ThoughtWorks, Inc., No. 20-CV-0100 (LJL), 2020 WL 6828490, at *2 (S.D.N.Y. Oct. 7, 2020)). More specifically Plaintiffs again note that Defendants have only "produced documents from three Allenberg Cotton email custodians" and seemingly base the "gap in production" on Defendants' failure to produce the topics discussed in Section A of this Order. See supra Section A(i)–(iv) at 1–6.

Given the Court's ruling that Plaintiffs are not entitled to what they identify as a "gap in production" and no other alleged basis for discovery on discovery, Defendants motion to strike Topic 22 is **GRANTED**.

### E. The Parties Dispute Regarding Interrogatory Responses

On November 12, 2024, Plaintiffs filed a letter motion to compel answers to 11 different interrogatories. Several of those disputes will be affected by this Order. Therefore, the Parties are ordered to meet and confer regarding the interrogatory responses and refile a joint letter regarding any remining disputes **by April 2, 2025**. The Court expects the Parties to make a good faith effort to resolve any interrogatory disputes not affected by this Order.

### F. The Parties Motions to Seal

Accompanying the Parties' serial letter motions on disputes in this matter are several motions to seal those letters and their attachments. See Dkt. Nos. 41, 53, 63, 70, 74. All of those motions were either unopposed or consented by the other Party to being sealed. Each of those motions to seal are **GRANTED**.

## CONCLUSION

In accordance with the instructions set forth in this Order, the Parties shall adhere to the following deadlines:

- A joint letter regarding any remining interrogatory disputes, and whether the documents produced by Allen in the Class Case may be deemed produced in this Action is due by April 2, 2025;

- The limited deposition or document production of topic 17 is due April 2, 2025;

- Defendants have until 39 days from the date of this Order to issue their international letter of request and depose Mr. Allen; and

- The Parties have until 94 days from the date of this Order to attempt to facilitate the deposition of Mamalis.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 42, 43, 51, 53, 57, 62, 63, 66, 70, 71, 72, 74.**

SO ORDERED.

DATED:   New York, New York
         March 19, 2025

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge