**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLENCORE LTD. and VITERRA B.V. (f/k/a GLENCORE GRAIN B.V.),<br><br>Plaintiffs,<br><br>v.<br><br>LOUIS DREYFUS COMPANY B.V. (f/k/a LOUIS DREYFUS COMMODITIES B.V.), ALLENBERG COTTON CO., LOUIS DREYFUS COMPANY HOLDING INC. (f/k/a LDC HOLDING INC.), TERM COMMODITIES INC., LOUIS DREYFUS COMPANY LLC (f/k/a LOUIS DREYFUS COMMODITIES LLC), and JOSEPH NICOSIA,<br><br>Defendants. | Case No. 1:23-cv-11125<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL**

Peter A. Bicks
Darrell S. Cafasso
Harry F. Murphy
Kim B. Goldberg
ORRICK, HERRINGTON &
SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
T: +1 212 506 5000
F: +1 212 506 5151
*Attorneys for Defendants*

July 9, 2026

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Court Should Certify the Question of Whether a CEA Plaintiff Alleging a Squeeze Must Calculate Deliverable Supply ..... 3

A. The question is a pure question of law ..... 3

B. The question is controlling ..... 4

C. There is a substantial ground for difference of opinion ..... 6

D. Glencore's argument that resolution of this question would not materially advance the ultimate termination of this case is incorrect ..... 8

II. The Court Should Certify the Question of Whether an Antitrust Plaintiff Must Prove a Legally Cognizable Relevant Market, Even If It Offers Direct Evidence of Price Control ..... 8

A. The question is controlling ..... 8

B. Glencore fails to refute that there is substantial ground for difference of opinion ..... 9

C. Glencore's failure to define a relevant market means resolution of this question would materially advance the ultimate termination of this suit ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apex Oil Co. v. DiMauro*,
713 F. Supp. 587 (S.D.N.Y. 1989) ....................3, 6

*Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*,
127 F.4th 178 (10th Cir. 2025) ....................10

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)....................9

*Capitol Recs. v. Vimeo, LLC*,
972 F. Supp. 2d 537 (S.D.N.Y. 2013)....................3

*Cargill, Inc. v. Hardin*,
452 F.2d 1154 (8th Cir. 1971) ....................3, 7

*Caro Cap., LLC v. Koch*,
653 F. Supp. 3d 108 (S.D.N.Y. 2023)....................8

*Centurions v. Ferruzzi Trading Int'l, S.A.*,
1994 WL 114860 (N.D. Ill. Jan. 7, 1993)....................7

*Conwood Co. v. U.S. Tobacco Co.*,
290 F.3d 768 (6th Cir. 2002) ....................10

*In re Cox*,
CFTC No. 75-16, 1987 WL 106879 (July 15, 1987)....................6, 7

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) ....................2, 6, 8

*Leist v. Simplot*,
638 F.2d 283 (2d Cir. 1980)....................4

*Lidle v. Cirrus Design Corp.*,
2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ....................8

*Minpeco, S.A. v. Hunt*,
718 F. Supp. 168 (S.D.N.Y. 1989) ....................4

*North American Soccer League v. U.S. Soccer Fed'n*,
2026 WL 1397077 (2d Cir. May 19, 2026) ....................10

*PepsiCo, Inc. v. Coca-Cola Co.*,
315 F.3d 101 (2d Cir. 2002)....................9

*In re Soybean Futures Litig.*,
892 F. Supp. 1025 (N.D. Ill. 1995) ....................3, 7

*Tanasi v. New All. Bank*,
2013 WL 12304559 (W.D.N.Y. Dec. 17, 2013)....................4

*Tantaros v. Fox News Network, LLC.*,
465 F. Supp. 3d 385 (S.D.N.Y 2020)....................4, 6, 9

*In re Term Commodities Cotton Futures Litig.*,
2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020)....................9

**Statutes**

28 U.S.C. § 1292(b) ....................10

## INTRODUCTION

LDC seeks interlocutory appeal of complex, novel issues of law that should be decided before this nine-figure case goes to trial, both to narrow or dispose of the claims and to provide critical guidance on significant legal issues with implications beyond this case. The Second Circuit has never decided whether a calculation of deliverable supply is required to prove a CEA market squeeze claim. Nor has it had the opportunity to consider whether an antitrust plaintiff must offer a legally cognizable definition of the relevant market when it relies solely on direct evidence of ability to influence price. These important legal issues of first impression are precisely the kind of "exceptional circumstances" that warrant certification of an appeal. If the Second Circuit declines to take the appeal, then there is no harm or delay to these proceedings (which Glencore initiated after waiting on the sidelines as the Class Action proceeded for more than a decade). If, however, the Second Circuit takes the appeal, then it confirms that the issues over which this Court wrestled at summary judgment are indeed sufficiently important and far-reaching to warrant interlocutory review before the Court, the parties, and a jury spend time and resources on a trial.

Glencore's opposition relies on mischaracterizations of the proposed legal questions and recharacterizations of Glencore's evidence at summary judgment, including repeated attempts to "correct" the record with evidence it now says it would introduce at trial. That is profoundly misguided. The certification inquiry here turns on whether there are *important questions of law* that are controlling given the now-closed summary-judgment record. Glencore's references to different potential evidence that might satisfy different legal standards are both wholly irrelevant and implicitly admit that LDC's questions are controlling—indeed dispositive—given the record in this case. Glencore must be held to its arguments and record on summary judgment.

***CEA Claim.*** Glencore has asserted throughout this case that whether a CEA plaintiff asserting a "squeeze claim" must provide a calculation of deliverable supply is a question of law.

It now self-servingly takes the contrary position that the issue is at best "mixed" and at worst "fact-bound." In doing so, it points to the evidence it submitted on summary judgment, which it then termed only "qualitative." This evidence does not constitute a quantification of deliverable supply. And critically, the Court's summary judgment Order held, as a matter of law, that quantification is not required and that qualitative evidence is sufficient. Whether quantification is required is a pure question of law that the Second Circuit can resolve without considering Glencore's so-called "qualitative" evidence of deliverable supply or deciding how to calculate deliverable supply in any given case. If the Second Circuit agrees that quantification of deliverable supply is required as a legal matter, that would dispose of the CEA claim.[1]

***Antitrust Claim***. Glencore does not dispute that whether an antitrust plaintiff must offer a legally cognizable definition of the relevant market in addition to evidence showing only ability to influence price is a pure question of law. Instead, it clings to inadmissible Complaint allegations and anticipated expert rebuttal testimony (not part of Glencore's *prima facie* case)—all of which is outside the summary-judgment record. Glencore's reference to evidence it might present at trial does not cure its failure to put forward, at summary judgment, admissible affirmative evidence of a legally cognizable market. *See Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) ("'[C]ontrolling' means controlling in light of the situation that exists when the district judge makes his certification."). Glencore does not dispute that its expert offers no such definition; even if he did, Glencore could not use that rebuttal testimony in its affirmative case. As LDC demonstrated at summary judgment, which is what would be up on review, because Glencore has

[1] Glencore's newfound assertion that it has sufficient evidence to support a calculation also is both false and irrelevant. Whether Glencore might convince this Court on remand that it has indeed put forward a calculation, if that is what the Second Circuit says is required, is a question for another day that has no bearing on this motion.

no affirmative evidence of a legally cognizable market, a ruling from the Second Circuit requiring such evidence would dispose of Glencore's antitrust claim. Resolution is especially important given the substantial difference of opinion on this point between the Order and existing precedent.

## ARGUMENT

### I. The Court Should Certify the Question of Whether a CEA Plaintiff Alleging a Squeeze Must Calculate Deliverable Supply.

#### A. The question is a pure question of law.

Glencore ***does not dispute*** that it has ***repeatedly*** asserted that deliverable supply is a legal question. Mtn. at 6. Instead, it now asserts that "the sufficiency of deliverable supply is a fact-bound concept." Opp. at 9. Glencore's argument sidesteps LDC's proposed question, which is about whether there must be a calculation—not whether deliverable supply was "sufficient" based on other indicia of "tightness." In any event, its argument should be rejected, as it misreads both LDC's Motion and the Order and runs contrary to Glencore's own statements in prior briefing.

Whether a squeeze plaintiff must offer a calculation of deliverable supply is a pure question of law that would not require the Second Circuit to consider Glencore's "qualitative" evidence or to decide how to calculate deliverable supply. Mtn. at 7-8. Indeed, the Order read *Cargill*, *Soybean*, and *Apex Oil* not to (as a matter of law) "require[] plaintiffs to allege exactly how much deliverable supply there was to demonstrate" influence on price or to "require the sort of quantification" LDC urged; it therefore found genuine issues of fact as to whether Glencore's "qualitative" evidence sufficed to prove its squeeze claim. Order at 11-12. LDC seeks certification to resolve this precise legal issue—whether the law requires a quantification calculation—which can be resolved "quickly and cleanly without having to study the record." Opp. at 9 (quoting *Capitol Recs. v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)). Glencore's reliance on the Court's statement that "[d]etermining whether cotton could be certificated is a factual inquiry for the jury,"

Opp. at 9, is inapposite because that statement concerned a separate issue (what cotton counts as deliverable supply). The Court addressed that point only *after* it resolved the antecedent legal question that no quantification is required.[2]

**B. The question is controlling**.

As LDC showed in its motion, a legal issue is "controlling" where "[r]eversal [on appeal] would end th[e] case," or if resolution of the issue would cause the case to "effectively be concluded." Mtn. at 16 (quoting *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 392 (S.D.N.Y 2020), and *Tanasi v. New All. Bank*, 2013 WL 12304559, at *1 (W.D.N.Y. Dec. 17, 2013)). Glencore does not dispute that it never offered a calculation of deliverable supply, instead arguing only that its evidence might "allow[] for a calculation." Opp. at 17-18. Glencore's reference to "data sources" it did not raise on summary judgment but supposedly would submit at trial to "assess whether sufficient cotton could be certificated at relevant times" is unavailing, Opp. at 9, as is its assertion that it has provided an adequate calculation of deliverable supply. *Id.* These arguments concern evidentiary questions—not the antecedent legal question that LDC seeks to certify. If quantification of deliverable supply is required as a matter of law, and Glencore has not offered such quantification, resolution of LDC's question in its favor would dispose of the CEA claim. Mtn. at 16.

Glencore does not show any real dispute that it failed to offer an admissible calculation of deliverable supply. Glencore's attempt to repackage and pre-litigate the sufficiency of purported

[2] Glencore's reliance on *Leist* and *Minpeco* is misplaced. In *Leist,* plaintiff pursued a fraud-based theory of liability arguing that the longs obstructed "all" delivery such that shorts had "no access to deliverable" supply, *Leist v. Simplot*, 638 F.2d 283, 290 (2d Cir. 1980); but Glencore's theory has only ever been that supplies were "tight," Dkt. 138 at 31. Glencore's citation to *Minpeco* refers to the plaintiff's expert's opinion on the relevant market definition for the ***antitrust*** claim, *Minpeco, S.A. v. Hunt*, 718 F. Supp. 168, 171-72 (S.D.N.Y. 1989), not what was sufficient for deliverable supply under that plaintiff's ***CEA*** claim.

"qualitative" evidence of deliverable supply that it submitted in connection with the summary judgment briefing (but which Glencore now erroneously calls "quantitative" evidence) is inapposite. Opp. at 10-12. For example, Darneille (Opp. at 10-11) opines that [redacted]. *E.g.*, ECF No. 150-137, ¶ 194. Likewise, Donaldson (Opp. at 11) [redacted]. ECF No. 150-138 at 49-50.[3] In sum, even if it were appropriate to pre-litigate whether Glencore could meet a Second Circuit rule that requires a calculation, its "qualitative" evidence does not quantify deliverable supply but instead makes abstract references to market conditions and relies on isolated datapoints that are, at most, indirect evidence of subcomponents of deliverable supply.

Glencore's continued reliance on attorney argument on deliverable supply cannot transform this otherwise dispositive legal question into one that is not controlling. Opp. at 9-10 (arguing that Glencore will "correct[]" its counsel's "arithmetic errors" before trial and "present the same data to the jury"); Mtn. at 9; Dkt. 153 at 10-12. And while Glencore acknowledges that LDC previously opposed its attorney calculations as "patently improper," Opp. at 9, its opposition provides no grounds to admit those calculations.

[3] Glencore argues that "the jury can calculate deliverable supply" based on raw ICE or USDA data. Opp. at 8. But LDC showed such information is "beyond the jury's ability to assess independently, without the benefit of expert testimony." Mtn. at 14. Glencore's argument that LDC is prevented from asserting on reply "that only an expert can calculate deliverable supply" (Opp. at 14) misreads LDC's Motion. Indeed, that Glencore's own counsel, attempting to use the methodology from a 2012 academic paper from LDC's expert, committed "arithmetic errors" trying unsuccessfully to provide an inadmissible calculation at summary judgment only proves that expert testimony is necessary to evaluate such data. Opp. at 9-10; Dkt. 138 at 32-33.

Glencore's last-ditch suggestion that it will present ***other*** evidence of quantification at trial is beside the point, because that hypothetical evidence does not bear on the ***legal standard*** LDC seeks to determine, and "controlling" must be evaluated on the basis of the summary-judgment record. *See Johnson*, 930 F.2d at 1205.

**C. There is a substantial ground for difference of opinion.**

Substantial ground for difference of opinion exists because the deliverable supply question is a "matter of first impression in this Circuit" ***and*** "is both 'complex and subject to legitimate dispute.'" Mtn. at 11-12 (quoting *Tantaros*, 465 F. Supp. 3d at 391-92). As this Court has recognized, a district court "should not hesitate" to certify a matter of first impression. *See Tantaros*, 465 F. Supp. 3d at 391-92. Glencore does not dispute that the Second Circuit has never addressed the question. *See* Opp. at 14. Certification is appropriate for this reason alone.

Glencore's attempts to minimize differences of opinion by selective quotations and strained interpretations are unavailing. LDC does not rely on dictum from *Apex Oil Co. v. DiMauro*, 713 F. Supp. 587, 601 (S.D.N.Y. 1989). Opp. at 14-15. As the Court recognized, "[*Apex Oil Co*.] does state that it 'must be pleaded and proved that the respondent accumulated a position in the futures market that exceeded the available deliverable supply.'" Order at 12. Indeed, the *Apex* court applied that legal standard and *did* calculate a deliverable supply of at least 2,700,000 barrels of oil, compared to a long position of 1,092,000 barrels, in concluding that "the long defendants lacked the requisite market dominance to actually effect a long squeeze." *Apex Oil*, 713 F. Supp. at 602. Glencore points to no case law in asserting that "the jury could rely on certificated stocks alone." *See* Opp. at 15.

Glencore further argues that in other cases LDC cites, "***much of*** the important evidence regarding deliverable supply was qualitative or did not turn on precise calculations." Opp. at 16 (emphasis added). It thus concedes that each case it attempts to distinguish—*Cox*, *Cargill*,

*Centurions*, *Soybean*—did involve a deliverable supply calculation, which is wholly lacking here. *See In re Cox*, CFTC No. 75-16, 1987 WL 106879, at *5-8 (July 15, 1987) (concluding "available wheat supply [was] approximately 26.2 million bushes," rather than the 222,000 calculated by the ALJ)[4]; *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1166-67 (8th Cir. 1971) (long position of 2,000,000 bushels exceeded deliverable supply); *Centurions v. Ferruzzi Trading Int'l, S.A.*, 1994 WL 114860, at *5 (N.D. Ill. Jan. 7, 1993) (comparing "fewer than [13] million bushels of soybean stocks…in deliverable position" compared to "a long position of more than [23] million bushels"); *In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1049-51 (N.D. Ill. 1995) (competing calculations of deliverable supply). The fact that the parties in those cases disputed which categories to include does not refute that each case included a quantification of deliverable supply. The absence of any case concluding that a quantification is not required shows at least substantial grounds for disagreement.[5]

Finally, Glencore mischaracterizes LDC's arguments about the Class Action as "quoting the off-hand remarks of class counsel." Opp. at 17. The Class Action claim relied on a 30-page expert economic analysis that ***did*** purport to calculate deliverable supply based on myriad methodological choices and assumptions—which no Glencore expert has done. Mtn. at 15. Glencore offers no response to that point.

---

[4] Glencore unsuccessfully challenges *Cox* because the deliverable supply quantification lacked "precision" (Opp. at 17), but LDC's question goes not to the ***sufficiency*** of the calculation but to whether a CEA claim can survive without ***any*** calculation.

[5] The parties' disputes as to calculations of deliverable supply in *In re Soybean Futures Litig.*, 892 F. Supp. 1025 (N.D. Ill. 1995), and *Cargill, Inc. v. Hardin*, 452 F.2d 1154 (8th Cir. 1971), *compare* Mtn. at 12-13 *with* Opp. at 15-16, underscores the disagreement.

### D. Glencore's argument that resolution of this question would not materially advance the ultimate termination of this case is incorrect.

Glencore is wrong that the question will not terminate the action or otherwise narrow the issues for trial because "Plaintiffs will offer some evidence that allows for a calculation," Opp. at 17-18, for the same reasons set forth above. Part I.B, *supra*; *see* Mtn. at 5.

## II. The Court Should Certify the Question of Whether an Antitrust Plaintiff Must Prove a Legally Cognizable Relevant Market, Even If It Offers Direct Evidence of Price Control.

### A. The question is controlling.

Glencore does not dispute that whether an antitrust plaintiff must prove a legally cognizable market is a "pure" question of law; instead, it argues that question is not controlling because "Plaintiffs have defined the relevant market." Opp. at 18-19. But Glencore relies on evidence it might present at trial, which does not cure the lack of any admissible affirmative evidence of a legally cognizable market on summary judgment. *See Johnson*, 930 F.2d at 1205. Regardless, Glencore's arguments fail, as it did not offer any admissible affirmative evidence. Mtn. at 18.

First, Glencore argues that it defined the relevant market in its Complaint. Opp. at 18-19. But a plaintiff cannot rely on "an unverified complaint" to prove its claims at summary judgment, much less at trial. *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023).

Next, Glencore suggests that Donaldson's rebuttal opinion may offer "informative testimony." Opp. at 20. But Glencore cannot rely on Donaldson's opinions to meet its evidentiary burden because they were offered only in rebuttal to [redacted]. *See* ECF No. 150-144 at 47; *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *4 (S.D.N.Y. Dec. 18, 2009) (collecting cases). Indeed, Glencore does not challenge that this Court held that Glencore's antitrust expert Spulber's testimony is admissible for ***rebuttal only***. *See* Order at 20; Mtn. at 18. As to other

supposedly "extensive testimony" (Opp. at 20), Glencore nowhere claims such unspecified evidence actually defines the relevant market. *See id*.

Finally, while Glencore points to cases examining cognizable market definitions in different commodities contexts (Opp. at 21), it fails to articulate how any of those cases bear on Glencore's failure to put forward any ***evidence*** defining the relevant market ***here***. Resolution of LDC's question is thus controlling because it would "significantly affect the conduct of the action." Mtn. at 18 (quoting *Tantaros*, 465 F. Supp. 3d at 389).[6]

**B. Glencore fails to refute that there is substantial ground for difference of opinion.**

LDC's Motion demonstrated substantial ground for difference of opinion concerning *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002), which this Court interpreted to mean that a plaintiff need not offer a legally cognizable market definition where it offers direct evidence of ability to influence price. Order at 13; *In re Term Commodities Cotton Futures Litig.*, 2020 WL 5849142, at *36 (S.D.N.Y. Sept. 30, 2020).[7] There are at least three independent bases to support a different view: The Second Circuit has not directly addressed the ambiguity in *PepsiCo*; sister circuits have "uniformly" applied a different view of *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ("*Brown*"); and the Second Circuit recently affirmed a finding that "proof of a market is needed for any Section 2 claim." Mtn. at 20.

As LDC demonstrated, the Court's interpretation of *PepsiCo* is in conflict with other jurisdictions that have held, following *Brown*, that a legally cognizable relevant market definition

---

[6] Glencore also suggests that review is improper here because LDC did not seek interlocutory appeal of the Class Action summary judgment opinion. Opp. at 19. But that case involved a different record and different expert testimony.

[7] Glencore's argument that LDC improperly seeks an "advisory opinion" on *PepsiCo* because the "Order in this case does not cite *PepsiCo.*," Opp. at 22 n.6, is incorrect because the Court cited its Class Action summary judgment decision, which relied on *PepsiCo*. *See* Order at 13; *In re Term*, 2020 WL 5849142, at *36 (citing *PepsiCo*.).

is a threshold element of an antitrust claim. Mtn at 20, n.1 (collecting cases). Glencore incorrectly claims such holdings are "dicta," but each citation is actually the respective Circuit's statement of what the law requires. *See id.*; Opp. at 23. Moreover, while Glencore asserts that some of LDC's cases "acknowledge the *possibility* of antitrust claims that do not require proof of a relevant market," Opp. at 24, it ignores that each of those cases did impose such a threshold requirement.[8] And contrary to Glencore's assertion, Opp. at 23, at least some of those cases involved Sherman Act § 2 claims, not just Clayton Act claims. *See, e.g.*, *Conwood*, 290 F.3d at 782; Mtn. at 20.

Finally, Glencore's argument that *North American Soccer League* fails to demonstrate any intra-Circuit uncertainty for waiver-related reasons, Opp. at 23, is unavailing because the district court's opinion, affirmed on appeal, found that "proof of a market is needed for any Section 2 claim." Mtn. at 20. The ambiguity Glencore asserts only underscores the need to "provide the Second Circuit an ideal vehicle to address the conflicting authority." *Id.*

### C. Glencore's failure to define a relevant market means resolution of this question would materially advance the ultimate termination of this suit.

Finally, Glencore refers back to its argument that it plans to offer evidence of a legally cognizable market. Opp. at 25. That argument fails for the same reasons set out above in Part II.A, *supra.* Resolution of the question would materially advance the litigation, including because it would eliminate the associated treble damages from this case. Mtn. at 21.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify its March 31, 2026 Order, Dkt. 225, for interlocutory appeal under 28 U.S.C. § 1292(b).

---

[8] *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 187 (10th Cir. 2025); *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002).

Dated: July 9, 2026
New York, New York

Respectfully submitted,

*/s/ Peter A. Bicks*

Peter A. Bicks (pbicks@orrick.com)
Darrell S. Cafasso (dcafasso@orrick.com)
Harry F. Murphy (hmurphy@orrick.com)
Kim B. Goldberg (kgoldberg@orrick.com)
51 West 52nd Street
New York, NY 10019-6142
T: +1 212 506 5000
F: +1 212 506 5151
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I, Peter A. Bicks, hereby certify that on July 9, 2026, a copy of the foregoing Reply Memorandum of Law in Support of Defendants' Motion for Certification for Interlocutory Appeal was served upon counsel named below by electronic mail, through which counsel has consented to receive service of sealed filings:

Eliot Lauer (eliot.lauer@katten.com)
Jacques Semmelman (jacques.semmelman@katten.com)
Julia Mosse (julia.mosse@katten.com)
Nathaniel Ament-Stone (nathaniel.ament-stone@katten.com)
KATTEN MUNCHIN ROSENMAN LLP
50 Rockefeller Plaza
New York, NY 10020

I certify under penalty of perjury that the foregoing is true and correct.

Dated: July 9, 2026

*/s/ Peter A. Bicks*
Peter A. Bicks